**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| **PHL VARIABLE INSURANCE COMPANY,**<br><br>Plaintiff,<br><br>v.<br><br>**GLOBAL FINANCIAL INVESTORS AND INSURANCE BROKERAGE INC.** and **KERRY T. PIANDES,**<br><br>Defendants. | Civil Action No. _____ |

## ORIGINAL COMPLAINT

PHL Variable Insurance Company ("PHL" or "Plaintiff"), by and through its attorneys, files its Complaint against Global Financial Investors and Insurance Brokerage Inc. ("Global") and Kerry T. Piandes ("Piandes") (collectively "Defendants") as follows:

### THE PARTIES

1. PHL is an insurance company organized and existing under the laws of the State of Connecticut, and having its principal place of business in Hartford, Connecticut.

2. Defendant Global is a corporation organized and existing under the laws of the state of New Hampshire and operating as an insurance agent, having its principal place of business at 254 Nashua Road, Londonderry, New Hampshire, 03053. On information and belief, Global is licensed and doing business in the state of New Hampshire.

3. Defendant Piandes is an individual residing, on information and belief, at 76 Heritage Hill Road, Windham, New Hampshire 03087. He is listed as the registered agent of

Defendant Global in New Hampshire's corporate records. On information and belief, he is also Global's sole owner.

## JURISDICTION AND VENUE

4. Plaintiff is situated in and a citizen of the state of Connecticut, and Defendants are situated in and citizens of the state of New Hampshire. As set forth below, the amount in controversy exceeds $75,000, exclusive of interest, attorneys' fees, and costs. As such, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

5. This Court is a proper venue for this action pursuant to 28 U.S.C. § 1391(a)(1) because both Defendants reside in New Hampshire.

## FACTUAL BACKGROUND

6. Plaintiff is, and during all relevant times has been, in the business of underwriting and issuing life insurance policies and products.

7. Global, as an agent of Plaintiff pursuant to the BGA Agreements, marketed and sold insurance policies issued by Plaintiff. Plaintiff paid commissions to Global for each policy sold by Global pursuant to the BGA Agreements.

8. Six policies that had been sold by Global, and which had been in effect for less than one year as of February 11, 2008, were held in trust by Noble Trust Company ("Noble"). Noble is not a party to this action, and acted as trustee of the trusts that owned the policies. Those policies included Policy Nos. 97522980, 97523401, 97526537, 97523446, 97524879, and 97526254 (the "Noble Policies").

9. Plaintiff paid commissions to Global totaling $1,592,743.14 in connection with the Noble Policies, an amount based upon the anticipated first year of premium payments that it expected to receive from Noble.

10. On February 11, 2008, the New Hampshire Banking Department, after discovering various irregularities with Noble's operations, appointed a conservator for Noble and commenced a liquidation proceeding in New Hampshire Superior Court, Docket No. 08-E-0053. That same day, the court entered a temporary restraining order ("TRO") requiring Noble to deliver to the conservator possession of Noble's property, and effectively suspending all activity on policies for which Noble acted as trustee. On March 27, 2008, the court issued an order appointing a liquidator and directing him to take possession of and liquidate Noble's assets.

11. After the February 11, 2008 TRO was issued, Plaintiff received no further payment of premiums on the Noble Policies.

12. The BGA Agreements provide that Global's commissions will be paid based upon "premiums paid" and "payments received" on policies sold by Global. They also require Global to refund any overpayment of commissions received from Plaintiff relating to premiums that were not paid to Plaintiff. In particular, Section 3.5 of each of the BGA Agreements provides that Global "shall promptly repay to [PHL] the amount of any other charge back of compensation in connection with the Products that have been issued pursuant to this Agreement." Section 3.8 of each BGA Agreement further provides that compensation shall be made in accordance with Schedule 3.1 to each BGA Agreement, and provides that if PHL "pays higher compensation to a Broker than the compensation set forth in Schedule 3.1 for business written under this Agreement, then [Global] shall be obligated to reimburse [PHL] for such payment." A June 30, 2009 "General Amendment" to the BGA Agreements also provides in Section 3.5 that "in the event of a chargeback of commissions, any compensation paid by [PHL] to [Global] . . . shall be promptly repaid," and that Global "shall reasonably cooperate with and assist [PHL] in the recovery of any such compensation."

13. As of February 11, 2008, a total of $608,839.84 in premium payments had been made on the Noble Policies. The difference between (i) the $1,592,743.14 of commissions previously paid by Plaintiff to Global in connection with the Noble Policies, and (ii) the $608,839.84 in premium payments that had been made on those policies, amounted to a total of $983,903.30 in overpaid commissions.

14. On September 30, 2009, Plaintiff sent a letter to Global demanding that Global repay the portion of commissions that it had received but for which premiums had not been paid.

15. Despite Plaintiff's demands, Global has refused to repay the overpaid premiums as required by its contractual agreements. Accordingly, Plaintiff is forced to bring this Complaint against Defendants.

## COUNT 1: BREACH OF CONTRACT
### (Against Global)

16. Plaintiff incorporates by reference paragraphs 1 through 16 as if fully set forth herein.

17. The BGA Agreements are valid and enforceable agreements.

18. Plaintiff has met all of its obligations under the BGA Agreements, and all conditions precedent necessary for Plaintiff to recover under the BGA Agreements have occurred.

19. Global breached the BGA Agreements by failing to repay to Plaintiff the overpaid amount of commissions Plaintiff had paid to Global and for which premiums were not paid.

20. Global's conduct has directly and proximately caused injury to Plaintiff in an amount no less than the improperly withheld amount of commissions Plaintiff paid to Global for which premiums were not paid, plus pre-judgment and post-judgment interest.

## COUNT 2:  BREACH OF FIDUCIARY DUTY
### (Against Global)

21. Plaintiff incorporates by reference paragraphs 1 through 21 as if fully set forth herein.

22. The relationship between Plaintiff and Global is fiduciary in nature.  Global owes to Plaintiff a duty to discharge its duties in good faith and with reasonable diligence.  Global also owes to Plaintiff a duty to not willfully misappropriate funds properly belonging to Plaintiff; to not withhold any property belonging to Plaintiff after Plaintiff has demanded its relinquishment; and to not otherwise act in a manner that materially prejudices Plaintiff's interests.

23. Global breached, and continues to breach, its fiduciary duties to Plaintiff by withholding funds properly belonging to Plaintiff after Plaintiff demanded their return.

24. Global's breach of its fiduciary duties has proximately caused injury to Plaintiff, including, *inter alia*, damages no less than the amount of funds improperly withheld, plus pre-judgment and post-judgment interest, and all attorneys' fees, costs and expenses relating to Plaintiff's efforts to recover those funds.

## COUNT 3:  ALTER EGO / DISREGARD OF CORPORATE ENTITIES
### (Against Piandes)

25. Plaintiff incorporates by reference paragraphs 1 through 25 as if fully set forth herein.

26. Piandes is the alter ego of Global, and uses Global as a sham to perpetrate material breaches of Global's contracts for his own personal benefit.

27. The separate identity of Global must be disregarded, and Piandes and Global treated as one entity, to prevent the use of the corporate fiction as an unfair device to inflict injury upon Plaintiff.

## COUNT 4:  MONEY HAD AND RECEIVED
### (Against Global and Piandes)

28. Plaintiff incorporates by reference paragraphs 1 through 28 as if fully set forth herein.

29. The overpaid commissions that Plaintiff paid to Global and for which premiums were not paid constitute money properly belonging to Plaintiff, but are now in the possession of Global and/or Piandes.

30. Plaintiff was under no moral or legal obligation to make the overpaid commissions payments, and neither Global nor Piandes in good conscience have any right to retain them.

31. Plaintiff has an equitable right to the return of the overpaid commissions, plus pre-judgment and post-judgment interest, attorneys' fees, and costs of court.

## PRAYER

For the foregoing reasons, Plaintiff respectfully requests that the Court:

a) enter judgment jointly and severally against Global and Piandes requiring the repayment to Plaintiff of all commissions that it paid to Global for which premiums were not paid, plus pre-judgment and post-judgment interest, attorneys' fees, and costs of court; and

b) grant such other relief to which Plaintiff may otherwise be entitled.

Respectfully submitted,

**PHL VARIABLE INSURANCE COMPANY,**

By its Attorneys,

January 20, 2010   **UPTON & HATFIELD, LLP**

By:   __/s/ Russell F. Hilliard_____
Russell F. Hilliard, Esq.
(NHBA #1159)
Justin C. Richardson, Esq.
(NHBA #12148)
159 Middle Street
Portsmouth, NH 03801
Tel:  (603) 436-7046
Fax:  (603) 431-7304
rhilliard@upton-hatfield.com
jrichardson@upton-hatfield.com

EDISON, MCDOWELL & HETHERINGTON LLP
Thomas F.A. Hetherington (to be admitted *pro hac vice*)
(Texas Bar No. 24007359)
Kendall J. Burr (to be admitted *pro hac vice*)
(Texas Bar No. 24067533)
Phoenix Tower
3200 Southwest Freeway, Suite 2920
Houston, Texas 77027
Telephone: (713) 337-5580
Facsimile: (713) 337-8850
tom.hetherington@emhllp.com
kendall.burr@emhllp.com